


55347/RBA/bcb

COPY IN CHAMBERS

0265-5765

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT<br>OF DIAMOND SERVICES CORPORATION,<br>ON BEHALF OF THE DIAMOND DREDGE<br>NO. 9 FOR EXONERATION FROM OR<br>LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NUMBER: 00-0156<br><br>SECTION: "L" (3) |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| JOSEPH FORET, JR. | CIVIL ACTION |
| VERSUS | NO.: 00-0708 |
| CENTRAL GULF TOWING, INC. | SECTION: "L" (3) |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| IN THE MATTER OF CENTRAL GULF<br>TOWING, INC., AS OWNER *PRO HAC<br>VICE* OF THE M/V VIVIAN, PRAYING<br>FOR EXONERATION FROM AND/OR<br>LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NUMBER: 00-1166<br><br>SECTION: "L" (3) |

### PRE-TRIAL BRIEF SUBMITTED ON
### BEHALF OF DIAMOND SERVICES CORPORATION
### ON CONTRACTUAL/INSURANCE AND INDEMNITY ISSUES

NOW INTO COURT, through undersigned counsel, comes Diamond Services

Corporation, and submits this Pre-Trial Brief on the contractual, indemnity and insurance



issues arising out of the Chet Morrison Contractors ("CMC")/Diamond Services Corporation ("Diamond Services") master service contract as a result of the alleged December, 1999 spud damage to Tennessee Gas Pipeline Company's 24 inch pipeline in Quatre Bayou Pass during dredging operations. The master service contracts entered into between CMC, Diamond Services and Central Gulf Towing, Inc., the owner of the M/V VIVIAN contain the identical indemnity and insurance provisions.

## FACTUAL BACKGROUND

Tennessee Gas Pipeline ("TGP"), contracted with CMC to re-bury a submerged pipeline, parts of which had been exposed due to erosion. CMC contracted with Diamond Services under a master service contract dated December 1, 1999, which governed the work Diamond Services' Dredge No. 9 performed for Chet Morrison Contractors in lowering the TGP pipeline (Master Service Contract attached as Exhibit "1").

CMC claims it repaired the pipeline on a time and material basis for $943,000.00, which Diamond Services alleges is excessive. Based upon Diamond Services' expert, Rimkus Consulting's estimation of the cost of repair, Diamond Services' P & I underwriters have agreed, without prejudice, to pay CMC's claim as an additional assured in the amount of the undisputed cost of repairs of $495,759.00, reserving all rights to seek reimbursement from CMC and/or CMC's insurers based upon the Court's interpretation of the contractual indemnity and insurance requirements in the master service contract.

## SYNOPSIS

The Master Service Contract (hereinafter "contract") between CMC and Diamond Services, requires CMC to be named as an additional assured under the Diamond Services' P & I policy, but does not require that policy insure CMC for contractual indemnity coverage. The contract also provides that CMC will defend and indemnify Diamond Services for claims made by CMC's customers, such as this claim for damage to the pipeline made by CMC's customer, TGP.

This is a case of first impression which is distinguishable from *Ogea v. Lofland Bros., Co.,* 662 F.2d 186 (5th Cir.1980) and its progeny, requiring insurance coverage obligations to be exhausted before indemnity clauses come into play. The *Ogea* rationale is inapplicable where there is no requirement under the contract for contractual liability insurance coverage in Diamond Services' P&I policy, which is the only policy where CMC is an additional assured for CMC's contractual indemnity obligation. The contractual indemnity terms of the CMC/Diamond Services' contract requires CMC to indemnify Diamond for the claims of CMC's customers. CMC is not insured for this exposure to Diamond Services as an additional assured under Diamond Services' insurance, and Diamond Services is entitled to exercise its demand for defense and indemnity from CMC and its insurers' for the claims of CMC's customer, TGP.

Commercial Underwriter's Insurance Company ("CUIC"), CMC's general liability insurer, issued a policy to CMC which provides contractual liability and indemnity coverage

- 3 -

for CMC and Diamond Services' claim against CMC for indemnity.

CUIC argues the insurance procurement and "other insurance" requirements of the contract should prevail over the indemnity provisions of the contract. This is incorrect since Diamond Services is only required to name CMC as an additional assured in its P & I policy, and this policy <u>does not</u> insure CMC's contractual liability, which is not required by the contract. The "other insurance clause" of the contract applies only to the insurance policies in which CMC is a named additional assured, the P & I policy, which does not provide contractual indemnity coverage to CMC.

## ARGUMENT & LAW

No party disputes the fact repairs to the pipeline were performed, only the amount of the repair costs, and who should ultimately pay these costs under the indemnity and insurance requirements of the master service contract, which govern the work.

This contract, in addition to requiring Diamond to have CMC named as an additional assured on its P & I policy, also contains cross-contractual indemnity agreements. Under the contractual language, since TGP was a CMC customer, then CMC and its insurers are obliged to defend and indemnify Diamond from the claims of CMC's customer, TGP.

Normally, Courts construe additional insuring requirements as taking precedent over contractual indemnity agreements. *Ogea*, 622 F.2d at 189. However, this contractual interpretation of the interplay between additional assured insurance coverage and indemnity requirements applies only in situations where there are mutually exclusive indemnity and

insurance agreements between the parties, and more importantly, where the contractual indemnity obligation is also <u>insured</u> under the additional assured coverage.

This is not the case in the CMC/Diamond contract, which is distinguishable from the *Ogea* situation. The CMC/Diamond contract requires CMC be named as an additional assured in the Diamond Services' P & I policy, but does not require contractual liability coverage for CMC, as in the typical *Ogea* scenario, where the indemnity requirements would be insured by the policy naming CMC as an additional assured.

In *Ogea* and subsequent cases, the Fifth Circuit noting that a contract must be viewed as a whole, and the insurance procurement and indemnity provisions of a contract should be read in conjunction with each other in order to properly interpret the meaning of the contract, established the rule "that a party who has entered into a contractual indemnity provision but who also names the indemnitor as an additional assured under its liability policies, must first exhaust the insurance it agreed to obtain before seeking contractual indemnity. *Tullier v. Halliburton Geophysical Services, Inc.*, 81 F.3d 552, 553 (5th Cir. 1996); *Klepac v. Champlin Petroleum Co.*, 842 F.2d 746 (5th Cir. 1988), rehearing denied 844 F.2d 788 (1988); *Woods v Dravo Basic Materials Company,* 887 F.2d 788 (5th Cir. 1989).

In *Ogea*, the indemnitor was obligated to indemnify the other party for damages paid to an employee of the indemnitor's by contract, regardless of fault based upon their insurance contract requirements. The contract required both parties to acquire insurance

naming the indemnitor as additional assured for obligations incurred in relation to drilling operations. In this context, the Fifth Circuit ruled the indemnity provisions applied to damages in excess of the required limit of liability insurance, and the indemnitor was relieved of liability because the indemnitor was insured as an additional assured.

As recognized by Judge Porteus in the recent case of *Computalog U.S.A. Inc., v. Mallard Bay Drilling,* 21 F. Supp. 3d 620, 624 ( E.D. La. 1998) the indemnity obligation must be insured by the policy for the insurance provisions to be applied first:

> In *Ogea*, Phillips was obligated to indemnify Loffland for damages paid to an employee of Phillip's contractor regardless of fault. *Ogea*, at 187-190. The contract between Loffland and Phillips also provided that Loffland was to acquire insurance naming Phillips as an additional assured for obligations incurred in relation to the drilling operations . . . The Fifth Circuit held that the indemnity provision would only apply to damages in excess of the required limit of liability and that **Phillips was relieved of liability because Phillips' indemnity obligation was covered by the policy.** *Computalog,* 21 F. Supp. at 624 (emphasis added).

In the case at bar, the contract requires CMC to be named an additional assured only in the Diamond Services' P & I policy, but there is no requirement Diamond Services insure CMC for CMC's liability to indemnify Diamond Services for repair costs of CMC's customer's property damage.

Diamond Services seeks to enforce CMC's contractual indemnity obligation to Diamond Services contained within the master service contract, which is not insured under Diamond's additional assured requirements, and obligates CMC to indemnify Diamond

Services from the claims of CMC's customers, TGP. Simply stated, the insurance requirements of the contract covering CMC's claim for its negligence, do not insure the separate indemnity obligation CMC has to Diamond Services under the contract for claims made by CMC's customers.

## MASTER SERVICE CONTRACT

Under the insurance sections of the CMC/Diamond contract, CMC as contractor is required to be a named additional assured under subcontractor, Diamond Services' P & I policy, but not the CGL policy. The contract requires Diamond Services to obtain a CGL policy with contractual liability coverage, but CMC is not required to be named as an additional assured. The contract then does not require the P & I policy to insure CMC for contractual indemnity coverage to Diamond Services:

2.0 INSURANCE

    (b).    COMPREHENSIVE GENERAL LIABILITY INSURANCE Covering all liabilities arising as a result of bodily injury, death, or damage to property, including, but without limitation, **contractual liability coverage covering SUB-CONTRACTORS' (Diamond Services') OBLIGATIONS UNDER THIS AGREEMENT TO CMC,** its co-venturers, co-operators, partners, and customers, and sub-contractors' obligations under the indemnity's clause contained herein, with geographic extensions of coverage to the Gulf of Mexico and any other area in which sub-contractor perform work in an amount of at least $5,000,000.00, any "watercraft exclusion" being deleted, and waiving all rights of subrogation against CMC and any of CMC's co-venturers, co-operators, partners, and customers;

    (d).    If Sub-Contractor rents or leases marine equipment and/or furnishes marine services hereunder, Sub-Contractor, in addition to all applicable insurance coverage provided in Paragraphs 2.1(a), (b) and (c), above shall carry the following additional insurance:

>    (ii) PROTECTION AND INDEMNITY INSURANCE (SP 23 form or equivalent) including but not limited to, coverage for injuries to or death of masters, mates, and members of the crew, transportation, wages, maintenance and cure, with geographic extensions of coverage to the Gulf of Mexico and other areas in which the vessel may operate, in an amount of at least $5,000,000.00, with the deductible in said policy not exceeding $25,000.00, and with the phrase "as owner of the vessel named herein" being deleted, and with all phrases reporting to limit the underwriters' liability to the value of the vessel or to that of an owner being deleted; providing *in rem* protection; and **naming CMC and any other CMC's co-venturers, co-operators, partners, and customers as additional assureds, and waiving all rights of subrogation against CMC and any of CMC's co-venturers, co-operators, partners and customers;** and, if the vessel is a tug or engaged in towing, deleting the exclusion of claims arising out or having relation to towage of any other vessel or craft; (Exhibit No. 1 at pages 1 & 2, emphasis added)

Under the facts of this case as alleged by the claimants, if the Court finds the damage to CMC's customer's pipeline was caused by Diamond's dredge No. 9, a vessel operating on a navigable waterway, in the Gulf of Mexico, the Diamond Services' P & I policy insuring that vessel would be the only insurance policy responding insofar as Diamond's liabilities were concerned. This P & I policy does not provide contractual liability to CMC as an additional assured, which is only covered in the CGL policy, where CMC is not a named assured.

*   *   *   *   *   *   *

### OTHER INSURANCE CLAUSE

The contract contains an "other insurance clause," which by its terms only applies to the insurance policies CMC is named as an additional assured, requiring those policies be primary insurance:

    2.3    All said insurance policies must contain clauses to the effect that any other policies covering CMC and its co-venturers, co-operators, partners, and customers, are to be non-contributory and the coverage required by this contract is to be primary. No "other insurance" provision shall be applicable to CMC and its affiliated, subsidiary, inter-related companies, or its co-venturers, co-operators, partners, or customers **by virtue of having been named an additional assured or loss payee under any policy.** Sub-contractor's liability under this agreement is in no way limited to, or by, the insurance set forth above, or by the monetary amounts of those insurances; Sub-Contractor shall be and remain liable to the full extent as determined otherwise by this contract or by law. (Exhibit No. 1, at Page 3, emphasis added)

The only policy CMC is named as an additional assured is the Diamond Services' P & I policy, which by the terms of the contract does not afford CMC insurance for its obligation to indemnify Diamond Services under the insurance requirements of the contract.

    \*    \*    \*    \*    \*    \*    \*

Under the Indemnities section of the contract, CMC is required to defend and indemnify Diamond Services from any claim made by CMC's customer for property damage, such as the alleged claim for damage to the pipeline herein asserted by TGP:

3.0 INDEMNITIES

(b)    **Property Damage or Loss: . . . CMC releases Sub-Contractor (Diamond Services) and its sub-contractors from any liability to CMC for, and CMC will defend, indemnify and hold Sub-Contractor Diamond Services) and its sub-contractors harmless from and against, all suits, actions, claims and demands based on property damage or loss, whenever occurring, suffered or incurred by CMC, its other contractors and sub-contractors, its co-venturers, co-operators, partners and customers and the officers, employees, agents, and representatives or any of them, arising from or relating in any way to the performance of the work**

**hereunder**, regardless of how such property damage or loss is caused even if caused by the negligence, whether sole or concurrent, or active or passive, or other legal fault, including strict liability, of Sub-Contractor or its sub-contractor. (Exhibit No. 1 at Page 3, emphasis added)

\*   \*   \*   \*   \*   \*   \*

### P & I POLICY CONTRACTUAL LIABILITY EXTENSION

CUIC argues the contractual liability extension clause contained in the CUIC and Diamond Services' P & I policy affords contractual liability coverage to CMC as an additional assured. This is incorrect, the Diamond Services P & I policy's contractual liability extension clause only affords coverage to an assured, Diamond Services or CMC (as an additional assured) when a written contract or agreement requires this coverage and the assured furnishes vessel services, the pertinent language in the Diamond Services' policy reads as follows:

**CONTRACTUAL LIABILITY EXTENSION**

In consideration of the premium charged for this insurance, the coverage afforded under this policy **is extended to insure the liability of the assured arising out of hold harmless and/or indemnity agreements contained in such contracts that have been entered into by the Assured for the furnishing of vessel services. . .** However, the coverage afforded by this contractual liability extension is subject to all other terms, conditions, limitations, warranties, and limitations of this policy. . . (Diamond Services' P & I policy attached as Exhibit No. 2, at Page 40, emphasis added)

CMC did not "furnish" vessel services, Diamond Services did. The principal purpose of the contract between CMC and Diamond Services was for dredging performed by the Diamond Services' Dredge No. 9.

The CMC/Diamond Services contract does not require Diamond Services' P & I policy provide contractual liability cover to CMC, and this agreement, along with the indemnity obligation is strictly construed. *Smith v. Tenneco Oil Co.,* 803 F.2d 1386, 1388 (5th Cir. 1986); *Marathon Pipeline v. Drilling Rig ROWAN/ODESSA,* 527 F.Supp. 824, 835 (E.D. La. 1981), affirmed 699 F.2d 240 (5th Cir.1983) cert. denied 464 U.S. 820 (1984).

Consequently, the *Ogea/Computalog* rationale does not come into play, where the contractual indemnity insurance coverage is not insured under the policy providing the additional assured coverage, as CMC did not furnish the services of a vessel, and there is no requirement this coverage be provided in the CMC/Diamond Services' contract.

### CENTRAL GULF P & I CONTRACTUAL LIABILITY

Central Gulf operated the VIVIVAN, which provided no motive power to the Diamond Dredge as it was maneuvering over the pipeline, and consequently has no liability for any alleged spud damage. It is undisputed the CMC/Central Gulf and CMC/Diamond Services master service contracts are identical, containing the same insurance and indemnity requirements.

The Central Gulf insurance policies also do not provide contractual liability coverage to CMC, except for claims arising the operation of the vessel, VIVIAN, and brought by the vessel's crew against CMC (MOAC Policy attached as Exhibit No. 6).

The Central Gulf MOAC P & I policy contains Endorsement No. 17, which limits the contractual coverage provided to CMC. The policy endorsement provides in pertinent

part: "It is understood and agreed that the special wording in favor of Chet Morrison Contractors, is added to the policy . . . Permission is hereby granted to charter the vessel(s) . . . (b) contractual liability shall be afforded Chet Morrison under this endorsement . . . providing a defense and indemnity to Chet Morrison for any claims brought by or on behalf the vessel's owners, employees, invitees, or crew for sickness, disease, personal injury or death, arising out of, directly or indirectly, the charter or brokerage of the vessel regardless if caused or contributed to by the sole or concurrent fault, negligence, or strict liability of Chet Morrison . . ." (Exhibit No. 6). Central Gulf's insurance does not provide CMC with contractual liability coverage.

    CMC is also only required to be a named assured under the Central Gulf P & I policy, which does not provide contractual indemnity, CMC is not required to be named as an additional assured under the Central Gulf CGL policy by contract. The Central Gulf CGL policy issued by Scottsdale Insurance Company contains a specific endorsement excluding contractual liability coverage for CMC. The endorsement states: "VESSEL CONTRACTUAL EXCLUSION, which amends Section V - Definitions, 8 "insured contract" to state: "Paragraph f. does not include the part of any contract or agreement: That indemnifies any person or organization for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any watercraft."(Exhibit No. 7)

## RECOVERY OVER FROM CMC'S CGL INSURANCE

CMC's insurer, Commercial Underwriters Insurance (CUIC) issued a policy of commercial general liability insurer to CMC. Under Section 1: Insuring Agreement, CUIC agrees to pay those sums CMC is legally obligated to pay because of property damage under the CMC/El Paso Energy Corporation Alliance Agreement (TGP) Article XII, (attached as Exhibit No. 5) which requires CMC to indemnify TGP for the property damage to TGP's pipeline. CUIC does not dispute this, the CUIC policy provides:

**2 Exclusions**

    **(b) Contractual Liability**

    "Bodily injury" or "property damage" for which
    the insured is obligated to pay damages by reason
    of the assumption of liability on a contract or agreement.
    This exclusion does not apply to liability for damages . . .

(2) Assumed in a contract or agreement that is an "insured contract". . . .

    Under Section 8 of the policy "insured contract" is defined in:

    "Section f: That part of any other contract or agreement
    pertaining to your business. . .under which you assume the
    tort liability of another party to pay for bodily injury or
    property damage to a third person or organization. Tort
    liability means that liability that would be imposed by law in
    the absence of a contract or agreement." (CUIC Insurance
    Policy attached as Exhibit No. 3, at Pages 1 and 11 of 13)

CUIC admits its policy insures CMC for CMC's contractual indemnity obligations under the contract but contends its policy contains a Protection and Indemnity insurance

exclusion which reads: "it is agreed and understood that this policy affords no coverage for losses which would be covered under a P & I and/or P & I contractual policy, and/or losses arising out of the use or operation of any owned vessel, or out of activities of master or crew of any owned vessel. All of the terms and conditions remain unchanged." (Exhibit No. 3)

Diamond Services' claim for contractual indemnity against CMC arises out of the contractual indemnity requirements of the CMC/Diamond Services master service contract, whereby CMC is required to indemnify Diamond Services from the claims of its customer's, TGP. Diamond Services' claim is not a P & I claim, it is a contractual indemnity claim arising out of the contract, and is not excluded by the CUIC P & I policy exclusion.

In a typical *Ogea* situation, CMC would be insured as an additional assured under Diamond Services' policy for both property damage liability and the defense and indemnity owed to Diamond Services. However, this is not the case, the CMC/Diamond Services contract only requires CMC to be named as an additional assured in the P & I policy, and there is no contractual requirement CMC is to be afforded contractual indemnity coverage as an additional assured under that policy or any other policy.

CMC cannot recover its indemnity obligation from Diamond's CGL insurer, (Exhibit No. 4) which contains contractual liability coverage, because the CMC/Diamond

Service's contract does not require CMC to be named as an additional assured on that policy.

CMC and CUIC's obligation to defend and indemnify Diamond Services arises out of the contractual indemnity provisions of the master service contract, not the activities excluded under the P & I exclusion of the CUIC policy. The contractual indemnity language of the CMC/Diamond contract in favor of Diamond Services remains a viable cause of action, since CMC is not insured by either Diamond Services' P & I or CGL policy for Diamond Services' contractual liability claim.

CMC's general liability carrier, CUIC, should respond for CMC's contractual obligation to Diamond Services under the indemnity provisions of the CMC/Diamond Services master service contract.

## CONCLUSION

For the foregoing reasons, Diamond Services submits it is entitled to recover over from CMC and its CGL carrier, CUIC, for any amounts paid to CMC for repairs to CMC's customer, TGP's pipeline on the basis of the indemnity provisions of the contract, which are not insured by the additional assured provisions of the master service contract. Finally, the CMC/Central Gulf contract does not require and CMC is not afforded contractual liability coverage under Central Gulf's insurance.

_____
MICHAEL L. McALPINE, T.A. (#9195)
RICHARD A. COZAD (#4537)
ROBERT B. ACOMB, III (#2303)
McALPINE & COZAD
701 South Peters St., Suite 300
New Orleans, LA 70130
Telephone: (504) 561-0323; Fax: 528-9442
Attorneys for Diamond Services Corporation

### CERTIFICATE OF SERVICE

    I do hereby certify that I have on April 17, 2001, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing and faxing same by United States mail, properly addressed and first class postage prepaid.

_____

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**