

55684/RBA/bcb                                                                                                  0265-5765

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT<br>OF DIAMOND SERVICES CORPORATION,<br>ON BEHALF OF THE DIAMOND DREDGE<br>NO. 9 FOR EXONERATION FROM OR<br>LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NUMBER: 00-0156<br><br>SECTION: "L" (3) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| JOSEPH FORET, JR. | CIVIL ACTION |
| VERSUS | NO.: 00-0708 |
| CENTRAL GULF TOWING, INC. | SECTION: "L" (3) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| IN THE MATTER OF CENTRAL GULF<br>TOWING, INC., AS OWNER *PRO HAC<br>VICE* OF THE M/V VIVIAN, PRAYING<br>FOR EXONERATION FROM AND/OR<br>LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NUMBER: 00-1166<br><br>SECTION: "L" (3) |

### REPLY BRIEF SUBMITTED ON BEHALF OF DIAMOND SERVICES CORPORATION TO COMMERCIAL UNDERWRITERS INSURANCE COMPANY'S PRE-TRIAL BRIEF ON CONTRACTUAL/INSURANCE AND INDEMNITY ISSUES

MAY IT PLEASE THE COURT:

This Memorandum is submitted on behalf of Diamond Services Corporation in reply to Commercial Underwriters Insurance Company (CUIC), Chet Morrison Contractors, Inc. (CMC), CGL carrier.

CUIC relies on the case of *Tullier v. Halliburton Geophysical Services,* 81 F.3d 552 (5th Cir.1996), which is by its facts is distinguishable. In *Tullier*, the Court was dealing with a contract which required **identical** cross-indemnity and insurance provisions, whereby the parties agreed to provide each other additional assured status as well as contractual liability insurance coverage. This resulted in a situation where the *Tullier* Court had to decide which insurance policy responds first. This is not the case here, as the contractual indemnity coverage is placed in Diamond's CGL policy, not in the P & I policy, and CMC is not a named additional assured in the Diamond's CGL policy. Thus, *Tullier* is clearly irrelevant to the inquiry here.

The clear intent of the parties as reflected in the CMC/Diamond Services master service contract was that Diamond Services was to provide P & I coverage, **without contractual liability coverage to CMC**. CMC in turn was to indemnify Diamond Services from claims of CMC's customers, TGP. These contractual insurance and indemnity provisions are narrowly and strictly construed.

> The obligation to indemnify is to be strictly construed,
> and the status of the indemnity is also interpreted narrowly.
> *Gulf Oil Corp. v. Mobil Drilling Barge or Vessel Margaret,*
> 441 F.Supp. 1 (E.D. La., 1975), *aff'd* 565 F.2d 958
> (5th Cir. 1978). Additionally, an indemnity agreement will
> be held to benefit a particular party only when it is expressed in

    that effect, and reflects the clear intent of the parties. *Day v. Odeco*, 353 F.Supp. 1350 (E.D. La. 1973); *Marathon Pipeline Co. v. Drilling Rig Rowan/Odessa*, 527 F.Supp. 824, 835 (E.D. La. 1981), *aff'd* 699 F.2d 240 (5th Cir. 1983), *cert denied*, 464 U.S. 820 (1984).

  CUIC argues the Court must interpret the master service contract between CMC and Diamond Services, which contains additional assured and indemnity provisions to determine which comes first. This would be true in the typical *Ogea, Tullier* scenario where there are mutual insurance policies covering both parties' liability and indemnity, which is not present here.

  The CMC/Diamond Services contract requires Diamond Services to name CMC as an additional assured only in its P & I insurance, but the contract does not require contractual indemnity coverage be provided to CMC under the P & I policy . . . and **naming CMC and any other CMC's co-venturers, co-operators, partners, and customers as additional insureds. . .**(*Exhibit No. 1 at p. 2*).

  Under the terms of the master service contract, which is strictly and narrowly construed, Diamond Services is required to obtain contractual liability coverage in the CGL policy ". . .**including but without limitation, contractual liability coverage** covering sub-contractor's (Diamond Services obligations under this agreement to CMC). . .(*Exhibit No. 1 at p. 2*)

  The contract does not provide that CMC is a named additional assured in Diamond Services' CGL policy. The alleged damage which is the subject of this suit is CMC's voluntary assumed repairs to CMC's customer's pipeline, which was allegedly damaged by

- 3 -

Diamond's dredge, a vessel. As a result, only Diamond Services P & I (vessel) policy would respond to CMC's claim for repair of the pipeline, with CMC as an additional assured as required by contract.

There is no contractual requirement that Diamond Services' P & I policy provide contractual liability coverage to CMC for the claims of its customers, TGP, for damage to the pipeline, nor does require Diamond Services provide contractual liability coverage to CMC, which would insure CMC from the claims of its customers, TGP.

The Diamond Services P & I policy's contractual liability extension clause only affords coverage to an assured, Diamond Services or CMC (as an additional assured) when a contract or agreement requires this coverage and the assured furnishes vessel services:

> "...the coverage afforded under this policy is extended to insure the liability of the assured arising out of hold harmless and/or **indemnity agreements contained in such contracts that have been entered into by the Assured for the furnishing of vessel services...**" *P & I policy attached as Exhibit No. 2, p. 40.*

The contract in issue does not require Diamond Services' P & I policy to provide contractual liability cover to CMC, and this indemnity obligation is strictly and narrowly construed. *Marathon*, 527 F.Supp. 835. Further, CMC did not furnish vessel services.

CUIC's interpretation of the CMC/Diamond Services master service contract is also incorrect in arguing the coverage provided by the Diamond Services' insurance policies are primary. The only policy CMC is named as an additional assured is the Diamond P & I policy. The CMC/Diamond Services' contract contains an "other insurance clause," which

- 4 -

by its terms only applies to the insurance policies in which CMC is named as an **additional assured**:

> "2.3 All said insurance policies must contain clauses to the effect that any other policies covering CMC and its co-venturers...**by virtue of having been named an additional assured** or loss payee under the policy." *Exhibit No. 1 at p. 3). (Emphasis added).*

The Diamond P & I policy does not afford CMC contractual liability insurance for its obligation to defend Diamond Services under the insurance requirements of the contract.

Although CMC is an additional assured on the P & I policy, since the contract does not require contractual liability coverage, that policy <u>does</u> <u>not</u> respond to CMC's contractual liability obligation to Diamond Services as is normally the case in the typical *Ogea, Tullier* scenario where there would be mutual insurance policies covering liability and indemnity. Thus, there is no "other insurance" to trigger application of those clauses.

Diamond Services submits this is the distinction which separates this case from the typical *Ogea, Tullier* scenario, where the Court must decide which insurance obligation responds first, the additional assured status or the indemnity obligation. The contractual indemnity language of the CMC/Diamond Services' contract favoring Diamond is not insured under the Diamond P & I policy and is still operative.

CMC's contractual liability to Diamond Services for the repair of its customer, TGP's pipeline, is not insured by either Diamond Services' P & I or CGL insurance. The indemnity clause of the contract provides that Diamond Services will defend and indemnify

- 5 -

CMC from property damage incurred by sub-contractor, Diamond Services, and CMC will defend and indemnify Diamond Services from any liability for property damage suffered or incurred by "CMC, its other contractors, and subcontractors, its co-venturers, co-operators, partners, and customers (TGP)."

"3.0 **INDEMNITIES**

(b) **Property Damage or Loss:** Sub-Contractor releases CMC from any liability to Sub-Contractor for, and Sub-Contractor will defend, indemnify and hold CMC, its co-venturers, co-operators, partners, and customers harmless from and against, all suits, actions, claims and demands based on property damage or loss, whenever occurring, suffered or incurred by Sub-Contractor, its other contractors, and sub-contractors, and the officers, employees, agents, and representatives of any of them, arising from or related in any way to performance of the work hereunder, regardless of how such property damage or loss is caused and even if caused by the unseaworthiness of any vessel, or the negligence, whether sole or concurrent, or active or passive, or other legal fault, including strict liability, of CMC, its co-venturers, co-operators, partners and customers.

<u>CMC releases Sub-Contractor and its sub-contractors from any liability to CMC for, and CMC will defend, indemnify and hold Sub-Contractor and its sub-contractors harmless from and against, all suits, actions, claims and demands based on property damage or loss, whenever occurring, suffered or incurred by CMC, its other contractors, and sub-contractors, its co-venturers, co-operators, partners and customers and the officers,</u> employees, agents, and representatives of any of them, arising from or relating in any way to the performance of the work hereunder, regardless of how such property damage or loss is caused even if caused by the negligence, whether sole or concurrent, or active or passive, or other legal fault, including strict liability, of Sub-Contractor or its sub-contractors. (Exhibit No. 1, p. 2). (Emphasis added).

Thus, it is clear, and no one disputes, that the indemnity language of the contract unambiguously requires CMC to defend, hold harmless and indemnify Diamond from the

claim of Tennessee Gas. CUIC is attempting to subvert this intent by urging case law, which superficially appears relevant, but when placed in the context of the contract/policies here, is irrelevant. As a result, Diamond Services is entitled to recover over from CMC or its insurer, CUIC any monies it pays to CMC for CMC's voluntary repair of CMC's customer's pipeline.

Respectfully submitted,

MICHAEL L. McALPINE, T.A. (#9195)
RICHARD A. COZAD (#4537)
ROBERT B. ACOMB, III (#2303)
McALPINE & COZAD
701 South Peters St., Suite 300
New Orleans, LA 70130
Telephone: (504) 561-0323; Fax: 528-9442
Attorneys for Diamond Services Corporation

### CERTIFICATE OF SERVICE

I do hereby certify that I have on May 3, 2001, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing and faxing same by United States mail, properly addressed and first class postage prepaid.