

56262/RBA/bcb   0265-5765

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT<br>OF DIAMOND SERVICES CORPORATION,<br>ON BEHALF OF THE DIAMOND DREDGE<br>NO. 9 FOR EXONERATION FROM OR<br>LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NUMBER: 00-0156<br><br>SECTION: "L" (3) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| JOSEPH FORET, JR. | CIVIL ACTION |
| VERSUS | NO.: 00-0708 |
| CENTRAL GULF TOWING, INC. | SECTION: "L" (3) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| IN THE MATTER OF CENTRAL GULF<br>TOWING, INC., AS OWNER *PRO HAC*<br>*VICE* OF THE M/V VIVIAN, PRAYING<br>FOR EXONERATION FROM AND/OR<br>LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NUMBER: 00-1166<br><br>SECTION: "L" (3) |

**OPPOSITION TO CUIC'S MOTION TO FIX ATTORNEYS FEES**

NOW INTO COURT, through undersigned counsel, comes Diamond Services Corporation, and opposes Commercial Underwriters Insurance Company's (CUIC) Motion

to Fix Attorneys Fees for reasons that separate counsel, Rick Kessenich, was retained by Diamond Services' P & I insurer when Diamond agreed to assume the defense and indemnity of Chet Morrison Contractors ("CMC") as evidence by counsel's correspondence to Robert Reich on December 4, 2001 to defend CMC in the Foret and TGP claims. CMC retained Robert Reich as their own counsel to prosecute their coverage claim for the disputed portion of the repair costs.

As the Court will recall, CMC claimed $943,000.00 in repair costs. The CMC's undisputed amounts claimed by CMC for repairs to the TGP pipeline were settled at the settlement conference on March 23, 2001 in the amount of $495,795.00. CMC's remaining claim for the disputed portion of CMC's pipeline repair costs were settled on the morning of trial, May 15, 2001 for $900,000.00, with Diamond Services' paying a total of $850,000.00, and CUIC paying $50,000.00 for a total settlement of $900,000.00.

Subsequently, the Court ruled against Diamond Services on CUIC's and Diamond's cross-motions for summary judgment on the contractual and insurance issues by Order entered May 16, 2001, deciding the parties priority of payment, whether Diamond was entitled to recover over from CMC or its insurer, CUIC, the monies paid to CMC for CMC's repair of the TGP pipeline.

Diamond Services does not dispute the terms, conditions or the interpretation of the master service contract, than those issues which are on appeal.

As evidenced by Diamond's counsel, Richard A. Cozad's December 4, 2000 letter to Robert S. Reich, Diamond and Central Gulf's P & I insurers agreed to defend CMC as an additional assured under their policies from any claims asserted against CMC by Foret and TGP, in accordance with CMC's status as an additional assured appointing Rick Kessenich to act as <u>defense</u> counsel for CMC. CMC elected on its own to retain Robert Reich as their own counsel solely to prosecute CMC's claim for coverage of its repair costs to the TGP pipeline.

CUIC settled CMC's bad faith refusal to settle the costs of repair when it was initially submitted to CUIC for $50,000.00. CUIC now attempts to recover over against Diamond Services P & I Underwriters alleging that CMC/Reich incurred attorneys fees in defense of the claims made by TGP and/or Foret, which Diamond Services' underwriters specifically appointed and paid Rick Kessenich to defend, as evidenced by the attached correspondence.

Under Louisiana law, an insurers obligation to defend its insured does not encompass the insured's efforts to establish coverage, and if the insured hires its own attorney to represent it in a coverage dispute, the insured will have to pay these costs themselves. *Steptore v. Masco Construction Co., Inc.*, 93-2064 (La. 18/94) 643 So.2d 1213, 1218.


The only attorneys fees incurred by Reich, Meeks & Treadaway was in prosecuting CMC's claim for coverage of the damages, and CUIC's motion to recover CMC's defense costs by assignment and evidentiary hearing should be denied.

Respectfully submitted,

MICHAEL L. McALPINE, T.A. (#9195)
RICHARD A. COZAD (#4537)
ROBERT B. ACOMB, III (#2303)
McALPINE & COZAD
701 South Peters St., Suite 300
New Orleans, LA 70130
Telephone: (504) 561-0323; Fax: 528-9442
Attorneys for Diamond Services Corporation

### CERTIFICATE OF SERVICE

I do hereby certify that I have on June 18, 2001, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing and faxing same by United States mail, properly addressed and first class postage prepaid.

- 4 -

# McALPINE & COZAD

A PROFESSIONAL LAW CORPORATION

701 SOUTH PETERS STREET - SUITE 300

NEW ORLEANS, LA 70130

TELEPHONE (504) 561-0323
FAX (504) 528-9442
www.mcalpinelaw.com

HOUSTON OFFICE
4900 WOODWAY · SUITE 650
HOUSTON, TEXAS 77056
TELEPHONE: (713) 629-1212
FACSIMILE: (713) 629-1441

December 4, 2000

**TELECOPIER - 830-3950**

Mr. Robert S. Reich
Reich, Meeks & Treadaway
Two Lakeway Center, Suite 1000
3850 N. Causeway Blvd.
Metairie, LA 70002

RE: Diamond Services Corporation, on behalf of the
DIAMOND DREDGE NO. 9
For Exoneration from or Limitation of Liability
Civil Action No. 00-0156; Section "L" (3)
Our File No.: 0265-5765

Dear Bob:

Further to my telefax of November 27, 2000, this will confirm that Diamond's and Central Gulf's protection and indemnity underwriters will <u>defend</u> CMC from any claims asserted against CMC by Foret and TGP, all in accordance with CMC's status as an additional insured on the involved policies. In addition, underwriters will <u>indemnify</u> CMC for any damages which may be assessed against it in accordance with the Court's allocation of any liability on the part of CMC.

As we also previously indicated, underwriters have selected Mr. Rick Kessenich to act as defense counsel for CMC.

By carbon copy of this letter to Mr. Rick Kessenich, I assume he is aware of the depositions set for tomorrow. If not, I would ask that he give me a call.

Very truly yours,

McALPINE & COZAD

Richard A. Cozad

rac/bcb/52649
cc: Mr. J. Frederick Kessenich - (581-6020)
    Mr. Tim Burr - (525-2456)

**EXHIBIT A**

November 27, 2000

***TELECOPIER - 830-3950***

Mr. Robert S. Reich
Reich, Meeks & Treadaway
Two Lakeway Center, Suite 1000
3850 N. Causeway Blvd.
Metairie, LA 70002

>    RE:   Diamond Services Corporation, on behalf of the
>            DIAMOND DREDGE NO. 9
>            For Exoneration from or Limitation of Liability
>            Civil Action No. 00-0156; Section "L" (3)
>            <u>Our File No.: 0265-5765</u>

Dear Bob:

Further to our meeting, I apologize for the delay in getting back to you.

In any event, Mr. Burr and I have agreed to <u>recommend</u> to our principals that CMC be defended and indemnified from the claim of Mr. Foret all in accordance with the terms and conditions of the CMC contract and respective insurance policies.

We have also recommended to our principals that separate counsel be retained to defend CMC from the *Foret* claim. I am unsure as to whether our principals will want to retain you as counsel or refer this case to some other attorneys. We will let you know. We will also recommend that our principals pay the cost of CMC's attorneys fees to date in response to the *Foret* claim.

The "Claim" of TGP is more problematical. Technically, TGP is not making any claim against CMC as CMC voluntarily undertook the repairs. Of course, CMC's actual liability for the repairs depends upon what percentage of fault, if any, is assigned to CMC for the accident. At this juncture, I don't know that anyone has any concrete information that CMC did anything wrong. Thus, the real liability culprits will have to be sorted out between Diamond, Central Gulf, T. Baker Smith, and, conceivably, TGP. Thus, it seems to me that CMC is asking the insurers to make a payment before any liability assessment is made against the assured (CMC). I am not sure if we can sell that to the insurers.

November 27, 2000
Page - 2 -

  By carbon copy of this letter to other counsel, I solicit their input on that avenue of reimbursement for the sums CMC is out of pocket for the repairs. One alternative may be, following the review of the damage supports, to enter into some sort of funding arrangement between Diamond's and Central Gulf's insurors and CMC's carrier, Commercial Underwriters Insurance Co.

  We also wish to note that Central Gulf/Diamond believe they still have a viable contractual indemnity claim against CMC's GL CUIC. However, we will have to address those issues with Mr. Rayburn.

  Please call if you have any questions.

              Very truly yours,

              McALPINE & COZAD

rac/bcb/52649           Richard A. Cozad
cc: Mr. Stanley Cohn
   (529-7418)
   Mr. J. Daniel Rayburn, Jr.
   (337-234-6533)
   Mr. Tim Burr
   (525-2456)

```
                              FILED
                         U.S. DISTRICT COURT
                       EASTERN DISTRICT OF L'

                         2001 MAY 16 A 10: 51
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA LORETTA G. WHYTE
                                    CLERK

| | | |
|---|---|---|
| IN RE DIAMOND SERVICES | * | CIVIL ACTION |
| | * | NUMBER 00-0156<br>(REF. ALL CASES) |
| | * | SECTION "L" (3) |

## ORDER AND REASONS

Diamond Services Corporation ("Diamond") has submitted a pleading entitled "Pre-Trial Brief Submitted on Behalf of Diamond Services Corporation on Contractual/Insurance and Indemnity Issues" arguing that it is entitled to recover from Chet Morrison Contractors, Inc. ("CMC") and its CGL insurance carrier, Commercial Underwriters Insurance Company ("CUIC"), any amounts Diamond paid to CMC for pipeline repairs. CUIC submitted a document entitled "Pre-Trial Brief Submitted on Behalf of Commercial Underwriters Insurance Company on Contractual/Insurance and Indemnity Issues" arguing that Diamond's P&I insurance policy must be exhausted before Diamond can seek indemnity from CMC or CUIC. The Court permitted Diamond to file a reply memorandum to CUIC's brief.

These pleadings do not address issues of quantum or liability. Instead, they deal only with the legal question of the parties' priority of payment. The Court will treat Diamond's brief as a motion for summary judgment on Diamond's claim for indemnity from CMC. CUIC's brief will be treated as a cross-motion for summary judgment and an opposition to Diamond's motion for summary judgment. Diamond's reply memorandum will be treated as an opposition to CUIC's motion for summary judgment.

DATE OF ENTRY
MAY 1 6 2001

## BACKGROUND

On August 18, 1997, CMC entered into an Alliance Agreement with El Paso Energy Corporation. The parties refer to El Paso Energy Corporation as "Tennessee Gas" and the Court will do likewise. Under the Alliance Agreement, CMC agreed to bury a submerged gas pipeline owned by Tennessee Gas, parts of which had become exposed.

CMC entered into a Master Service Contract ("MS Contract") with Diamond on December 1, 1999. Under the MS Contract, Diamond's Dredge No. 9 would perform certain work as a subcontractor for CMC in burying the Tennessee Gas pipeline. While working under the MS Contract, Diamond's Dredge No. 9 allegedly dropped a spud that contacted and damaged Tennessee Gas's pipeline.

CMC claims that it repaired the pipeline on a time and material basis for $943,000.00, which Diamond alleged was excessive. Diamond's P&I underwriters agreed, without prejudice, to pay CMC's claim as an additional assured in the amount of the undisputed cost of repairs of $485,759.00, reserving all rights to seek reimbursement from CMC and/or CMC's insurers. The amount and reasonableness of CMC's costs to repair the pipeline are not at issue in these motions. A trial on those issues was set to begin on May 14, 2001. However on the morning of trial, after consultation with the Court, the parties announced that they had settled the issue of quantum.

At issue in these cross-motions for summary judgment is a straightforward question of contract interpretation, that is, under the MS Contract, which contains both insurance procurement provisions and indemnity provisions, what is the answering priority of those provisions.

## INSURANCE AND INDEMNITY PROVISIONS

The MS Contract requires Diamond to procure certain insurance policies.[1] Diamond is required to secure CGL insurance that provides "contractual liability coverage." The MS

---

[1] The relevant MS Contract insurance requirement provides:

2.1   Without prejudice to, or otherwise diminishing [Diamond's] duties under the indemnities clause hereinafter, [Diamond], at its own cost and expense, shall procure, and throughout the term of this agreement maintain in full force and effect, insurance on forms and with insurers approved by CMC, providing CMC at least (30) days advance written notice of cancellation, as follows:

. . . .

(b) Comprehensive General Liability Insurance covering all liabilities arising as a result of bodily injury, death, or damages to property, including, but without limitation, contractual liability coverage covering [Diamond's] obligations under this agreement to CMC, its co-venturers, co-operators, partners, and customers, and [Diamond's] obligations under the Indemnities clause contained herein, with geographic extensions of coverage to the Gulf of Mexico and any other area in which [Diamond] may perform work, in an amount of at least $5,000,000.00, any "watercraft exclusion" being deleted, and waiving all rights of subrogation against CMC and any of CMC's co-venturers, co-operators, partners, and customers;

. . .

(d) If [Diamond] rents or leases marine equipment and/or furnishes marine services hereunder, [Diamond], in addition to all applicable insurance coverage provided in Paragraphs 2.1(a), (b), and (c) above shall carry the following additional insurance:

(ii) Protection and Indemnity Insurance (SP 23 form or equivalent) including, but not limited to, coverage for injuries to or death of masters, mates, and members of the crew, transportation, wages, maintenance and cure, with geographic extension of coverage to the Gulf of Mexico and other areas in which the vessel may operate, in an amount of at least $5,000,000.00; with the deductible in said policy not exceeding $25,000.00, and with the phrase "as owner of the vessel named herein" being deleted, and with all phrases purporting to limit the underwriter's liability to the value of the vessel or to that of an owner being deleted; providing in rem protection; and naming CMC and any of CMC's co-venturers, co-operators, partners, and customers as additional assureds, and waiving all rights of subrogation against CMC and any of CMC's co-ventures, co-operators, partners and customers; and, if the vessel is a tug or engaged in towing, deleting the exclusion of claims arising out of or having relation to towage of any other vessel or craft;

2.3   All said insurance policies must contain clauses to the effect than any other policies covering CMC and its co-venturers, co-operators, partners, and customers, are to be non-contributory and the coverage required by this contract is to be primary. No "other insurance" provision shall be applicable to CMC and its affiliated, subsidiary, inter-related companies, or its co-venturers, co-operators, partners, or customers by virtue of having been named an additional assured or loss payee under any policy. [Diamond's] liability under this agreement is in no way limited to, or by, the insurance set forth above, or by the monetary amounts of those insurances; [Diamond] shall be and remain liable to the full extent as determined otherwise by this contract or by law.

3

Contract does not require Diamond to name CMC as an additional assured under the CGL policy. Diamond is further required to secure a P&I insurance policy that names CMC as an additional assured. The MS Contract provision requiring Diamond to obtain P&I insurance did not include the "contractual liability coverage" language that was contained in the CGL insurance requirement.

The MS Contract contains reciprocal indemnity provisions for both personal injury and property damage.[2] Under the indemnity provisions of the MS Contract, CMC is required to defend and indemnify Diamond for any claims made against Diamond by CMC's customers.

Diamond secured coverage of a P&I policy through Lumbermen's Mutual Casualty Company that was in force during the alleged incident ("Diamond's P&I policy"). The schedule of vessels contained in that policy includes the Diamond Dredge #9 and indicates that P&I coverage in the amount of $5,000,000.00 is provided for that vessel.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law " Fed.R.Civ.P. 56(c).

---

[2] The relevant portion of MS Contract, paragraph 3.0(b) provides:

(b) Property Damage or Loss: ... CMC releases [Diamond] and its sub-contractors from any liability to CMC for, and CMC will defend, indemnify and hold [Diamond] and its sub-contractors harmless from and against, all suits, actions, claims and demands based on property damage or loss, whenever occurring, suffered or incurred by CMC, its other contractors and subcontractors, its co-venturers, co-operators, partners and customers and the officers, employees, agents, and representatives of any of them, arising from or relating in any way to the performance of the work hereunder, regardless of how such property damage or loss is caused even if caused by the negligence, whether sole or concurrent, or active or passive, or other legal fault, including strict liability, of [Diamond] or its sub-contractors.

4

The moving party bears the burden of establishing that there are no genuine issues of material fact. However, the nonmovant cannot rest on mere allegations or denials but must set forth specific facts showing that there is a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321-22 (1986). There is no "genuine issue for trial" where the record, as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

## ANALYSIS

The issue here is whether Diamond is entitled to recover from CMC or its insurer, CUIC, any monies it pays to CMC for CMC's repair of the pipeline. A maritime contract is interpreted according to the general rules of contract, construction and interpretation. *See, e.g., Marine Overseas Services, Inc. v. Crossocean Shipping, Co., Inc.*, 791 F.2d 1227 (5th Cir. 1986); *Ogea v. Loffland Brothers Co.*, 622 F.2d 186 (5th Cir. 1980). "Each provision of a contract must be read in light of others so as to give each the meaning reflected by the contract as a whole." *Computalog U.S.A., Inc. v. Mallard Bay Drilling*, 21 F.Supp.2d 620, 624 (E.D. La. 1998) (*citing Southwestern Engineering Co. v. Cajun Elec. Power Co-op., Inc.*, 915 F.2d 972 (5th Cir. 1990)). Indemnity and insurance procurement provisions of a contract must be construed harmoniously to effect the meaning intended by the contract as a whole. *See Tullier v. Halliburton Geophysical Services, Inc.*, 81 F.3d 552, 554 (5th Cir. 1996); *Computalog*, 21 F.Supp.2d at 625. In a line of cases beginning with *Ogea*, the Fifth Circuit has construed insurance procurement requirements as being primary over contractual indemnity provisions in the same document. *See* 662 F.2d at 186; *see also Tullier*, 81 F.3d at

5

554; *Klepac v. Champlin Petroleum Co.*, 842 F.2d 746 (5th Cir. 1998).

Diamond argues that this is a case of first impression which is distinguishable from *Ogea*. Diamond's argument is that the MS Contract does not require "contractual liability coverage" under the P&I policy, and, therefore, the P&I policy does not respond to CMC's contractual liability obligation to Diamond. Diamond believes this is the case despite its admission that CMC is an additional assured under the P&I policy. Therefore, Diamond asserts, this is not a case where there would be mutual insurance policies covering liability and indemnity and CMC is required to indemnify Diamond for all amounts paid to it as an additional insured under the P&I policy.

The Court is unpersuaded that these facts require an exception to the *Ogea* line of cases. In *Tullier*, the Fifth Circuit discussed the principals to be applied in reading the insurance and indemnity provisions of a contract together:

> In a line of cases commencing with *Ogea v. Loffland Brothers Co.*, 622 F.2d 186 (5th Cir.1980), this Court has held that a party . . . who has entered into a contractual indemnity provision but who also names the indemnitor . . . as an additional assured under its liability policies, must first exhaust the insurance it agreed to obtain before seeking contractual indemnity.

81 F.3d at 553 (*citations omitted*).

There is no reason for an indemnitor to require an indemnitee to procure insurance if the indemnitor did not intend to limit its indemnification obligations to the excess of the required insurance coverage. *See, e.g., Ogea*, 622 F.2d at 189-90. To read the indemnity and insurance requirements any other way produces an incoherent result, *e.g.*, why would CMC require Diamond to obtain certain insurance polices if CMC is required to indemnify Diamond for any claims covered under those policies.

6

The parties argue extensively about whether or not the contractual liability extension provision of Diamond's P&I's policy applies to CMC.[3] However, the result in this case does not turn on the applicability of this provision.[4] The essential fact is that the liability insurance provided to both Diamond and CMC under Diamond's P&I policy is primary and, therefore, before CMC is required to indemnify Diamond, the limits of the P&I policy must be exhausted. Once the policy limit is exhausted, the indemnity provisions of the MS Contract come into effect.

Finally, Diamond goes on to state that Central Gulf Towing, Inc. ("Central Gulf") entered into an identical master services contract with Diamond. Diamond describes the similarities between its situation and that of Central Gulf. However, it appears that Central Gulf has not made a claim for indemnity from CMC and Diamond does not make one in its

---

[3] Diamond's P&I policy contains a contractual liability extension provision that provides:

CONTRACTUAL LIABILITY EXTENSION
In consideration of the premium charged for this insurance, the coverage afforded under this policy is extended to insure the liability of the assured arising out of hold harmless and/or indemnity agreements contained in such contracts that have been entered into by the Assured for the furnishing of vessel services.

[4] While the Court finds that it is not necessary to consider this provision, if it were, a fair reading of it supports CMC's position. Diamond asserts that the contractual liability extension provision does not afford coverage to CMC because CMC did not "furnish" vessel services to Diamond, instead, Diamond "furnished" vessel services to CMC. CMC counters that this provision is not limited to to contracts that have been entered into for the furnishing of the *Assured's* vessel services only. Inserting CMC for the assured in the relevant provision provides the following result:

[T]he coverage afforded under this policy is extended to insure the liability of CMC arising out of hold harmless and/or indemnity agreements contained in such contracts that have been entered into by CMC for the furnishing of vessel services.

There is no question that the MS Contract was for the "furnishing of vessel services" and that those services were provided by Diamond's Dredge #9. Therefore, the contractual liability coverage would be extended to CMC under this provision of Diamond's P&I policy.

7

brief. Therefore, the master services contract between Central Gulf and CMC need not be addressed at this time.

## CONCLUSION

For the foregoing reasons, Diamond Services Corporation's motion for summary judgment is hereby DENIED and Commercial Underwriters Insurance Company's cross-motion for summary judgment is GRANTED.

Done this 16 day of May, 2001, in New Orleans, Louisiana.

U.S. District Court Judge

8